E. Allen Dodd, Alabama Bar #DOD011
**SCRUGGS, DODD & BRISENDINE, P.A.**
PO Box 681109
Fort Payne, AL 35968
Telephone: (256) 845-5932
eadscruggs@farmerstel.com
*Pro hac vice* attorney for plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| David M. Lauck,<br>         Plaintiff,<br>vs.<br>Campbell County, Wyoming, a jural entity; Scott D. Matheny, in his personal capacity and his official capacity as Sheriff of Campbell County, Wyoming Sheriff's Office; Charlene Rae Edwards, in her personal capacity and her official capacity as Counsel for Campbell County, Wyoming Sheriff's Office; Black Diamond Investigation and Security Inc., a Wyoming corporation; Does 1, 2 and 3,<br>         Defendants. | Case No. 3:21-CV-08036-MTL<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS CAMBPELL COUNTY'S, SCOTT D. MATHENY'S, AND CHARLENE RAE EDWARDS'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION** |

Plaintiff David M. Lauck ("Plaintiff," or "Lauck"), by and through his counsel of record, pursuant to this Court's Order of March 3, 2021 (Doc. 6) hereby responds to and opposes the motion ("Motion") of certain named Defendants Campbell County, Wyoming, Scott D. Matheny and Charlene Rae Edwards (collectively, "CCSO Defendants") to dismiss Lauck's Complaint for an alleged lack of personal jurisdiction for lack of sufficient

-1-

1  contacts. As shown below, the Motion should be dismissed. Plaintiff's Response
2  ("Response") is based upon the accompanying Memorandum of Points and Authorities,
3  the pleadings filed in this case to date, including Plaintiff's Complaint, the Plaintiff's prior
4  response to CCSO Defendants' motion to dismissed filed in the state court litigation styled
5  David M. Lauck vs. Campbell County, Wyoming, a jural entity; Scott D. Matheny, in his
6  personal capacity and his official capacity as Sheriff of Campbell County, Wyoming
7  Sheriff's Office; Charlene Rae Edwards, in her personal capacity and her official capacity
8  as Counsel for Campbell County, Wyoming Sheriff's Office; Black Diamond Investigation
9  and Security Inc., a Wyoming corporation; Does 1, 2 and 3, Defendants, In the Superior
10 Court of Arizona In and For the County of Yavapai, Case Number P-1300-CV-2020-
11 000981 (attached hereto as Exhibit "A"), and the Declaration of David M. Lauck and
12 exhibits thereto ("Decl.") attached to that Response. References herein throughout to the
13 Declaration or "Decl." refer to Plaintiff's Declaration appended to his State court response.
14 Plaintiff does not waive his argument this matter should be remanded to the Superior Court,
15 Yavapai County, Arizona because the CCSO Defendants did not timely remove this matter
16 to this District Court, failed to comply with the removal requirements, and availed
17 themselves of state court jurisdiction. This matter should be remanded to the Yavapai
18 County, Arizona state court. Plaintiff will file timely remand papers in this matter.
19 //
20  **STANDARD OF REVIEW**
21      The CCSO Defendants move to dismiss Plaintiff's claims arguing that Arizona
22 Courts lack personal jurisdiction over the CCSO Defendants. Where CCSO Defendants
23 move to dismiss Plaintiff's claims upon claims of lack of personal jurisdiction, and the
24 Motion is based upon a written record without an evidentiary hearing, "the Plaintiff need
25

only make a *prima facie* showing of jurisdictional facts." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). When the CCSO Defendants' motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Renteria*, 452 F. Supp. 2d at 919 (citing *Federation of African Amer. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996)). *Steinaker v. Sw. Airlines*, Co., 472 F. Supp. 3d 540, 546 (D. Ariz. 2020), appeal dismissed, No. 20-16572, 2020 WL 6742705 (9th Cir. Sept. 22, 2020). That is, when reviewing the Defendants' motion to dismiss, the court must accept all material facts alleged by the non-movant as true. *See, e.g., Sun World Corp. v. Pennysaver, Inc.*, 130 Ariz. 585, 637 P.2d 1088 (App. 1981).

The test to be applied to Plaintiff's allegations and facts averred by affidavit is whether "[c]onsidering all of the contacts between the defendants and the forum state, did those defendants engage in purposeful conduct for which they could reasonably expect to be haled into that state's courts with respect to that conduct." *Planning Group v. Lake Mathews Mineral*, 226 Ariz. 262, ¶ 25, 246 P. 3d 343 (2011). A fuller discussion of the relevant Arizona long-arm statute and applicable state and federal decisions is found below.

### FACTS AND AVERMENTS

**A. Contacts between CCSO Defendants And Plaintiff In Arizona.**

1. Plaintiff Lauck was employed by the defendant Campbell County, Wyoming Sheriff's Office ("CCSO") for more than 2 decades. Decl. ¶ 3.

2. Defendant Matheny was employed by CCSO during the majority of the time Plaintiff worked at CCSO. Decl. ¶4.

3. At all relevant times, Defendant Charlene Edwards was associated with CCSO. Decl. ¶5.

4. Plaintiff moved from Wyoming to Chino Valley, *Arizona* in 2010. Decl. ¶6.

5. The CCSO Defendants knew Plaintiff lived in *Arizona* as early as 2015. Decl. ¶2.

5. Plaintiff has a gunsmithing business in Chino Valley, *Arizona*, DL Sports, Inc. Decl. ¶7.

6. DL Sports, Inc. is a corporation organized under Arizona law. *Id*.

7. At all relevant times, the CCSO Defendants were aware that Plaintiff owned and operated a gunsmithing, firearms, and training business in Arizona. Decl. ¶10.

8. CCSO Defendants contacted Plaintiff in *Arizona* at his *Arizona* mailing address, phone number and email on numerous occasions. Decl. ¶11.

9. By way of example, on October 16, 2015, Plaintiff sent a facsimile transmission ("Fax") to Defendant Matheny at the CCSO Fax number requesting information necessary to obtain a Law Enforcement Officers Safety Act ("LEOSA") permit issue for firearms. Decl. ¶12.

10. Plaintiff received a response from Defendant Matheny four days later. Plaintiff received a Fax at Plaintiff's *Arizona* number containing a letter signed by Sheriff Matheny related to the LEOSA permit. Decl. ¶13.

11. That same day, Plaintiff sent another Fax to CCSO related to the LEOSA permit issue.

12. Defendant Matheny responded, and called Plaintiff on January 15, 2016 at Plaintiff's *Arizona* phone number in Chino Valley, *Arizona*. Matheny left a message, and indicated that he had researched to find Plaintiff's phone number in *Arizona*. Plaintiff's

-4-

1  *Arizona* phone number is listed on Plaintiff's website along with Plaintiff's *Arizona* address. Decl. ¶15.

13.   The CCSO Defendants thwarted Plaintiff's attempts to obtain a LEOSA permit in 2016.

14.   On March 20, 2018, Defendant Matheny indicated he was sending a letter to the *Arizona* Department of Public Safety in relation to Plaintiff. The letter was related to Plaintiff's LEOSA permit. Decl. ¶17.

15.   In 2018, Defendant Matheny signed a CCSO/Wyoming retired peace officer card for Plaintiff and indicated on the card that Plaintiff was a non-resident of the State of Wyoming and had separated in good standing. Decl. ¶18.

**B. CCSO Defendants Violate Statutory Prohibition Against Release of Plaintiff's Confidential Personnel Records and Publish Smear Documents in Arizona to Cast Plaintiff in a False Light.**

16.   The CCSO Defendants maintained Plaintiff's confidential personnel records after Plaintiff separated from service with CCSO Defendants. Decl. ¶19.

17.   The CCSO Defendants are prohibited by Wyoming law from releasing Plaintiff's confidential personnel records.

18.   Wyo. Stat. Ann. Section 16-4-203(d)(iii)(West) provides that the CCSO Defendants shall deny the right of inspection of Plaintiff's confidential personnel records with certain exceptions not relevant here. *See* Plaintiff's Complaint at ¶21.

19.   In response to a subpoena delivered to the CCSO Defendants by *Arizona* litigants in a lawsuit pending in *Arizona* courts, the CCSO Defendants published in *Arizona* portions of Plaintiff's confidential personnel file to third parties in *Arizona* without Plaintiff's permission. Decl. at ¶22.

20. The CCSO Defendants did not object to the request from the third parties in Arizona.

21. The CCSO Defendants did not raise the Wyoming personnel file statute in response to the request from the third parties in *Arizona*.

22. The CCSO Defendants did not object to the request on the grounds that *Arizona* courts had no jurisdiction over the CCSO Defendants.

23. Plaintiff also avers that the CCSO Defendants published Plaintiff's confidential personnel file to parties in *Arizona* in violation of the statute. Plaintiff avers that CCSO Defendants also provided incomplete documents ("Smear Documents") to parties in *Arizona* relating to Plaintiff which were misleading as presented and which cast Plaintiff in a false light. Pltf's Compl., ¶28.

24. Plaintiff avers that the CCSO Defendants did not produce and withheld from the *Arizona* third parties relevant laudatory and commendatory documents found in Plaintiff's confidential personnel file. Pltf's Compl., ¶29 (including description of laudatory comments).

25. The CCSO Defendants did not include, in the Smear Documents published in *Arizona*, a polygraph report showing that Plaintiff was truthful and honest. Pltf's Compl., ¶30.

26. Prior to CCSO Defendants' publication of the Smear Documents in *Arizona*, the CCSO Defendants knew that: Wyoming law prohibited disclosure of the Smear Documents; CCSO policy prohibited disclosure of the Smear Documents; and, Plaintiff objected to the disclosure of the Smear Documents. Pltf's Compl., ¶30.

27.   The CCSO Defendants published in *Arizona* the Smear Documents to *Arizona* residents and citizens in a pending *Arizona* lawsuit being litigated in an *Arizona* court. Plt's Compl., generally, and ¶81.

28.   The Plaintiff had a valid business expectancy in providing consulting and expert witness services. Pltf's Compl., ¶119.

29.   The CCSO Defendants knew of Plaintiff's valid business expectancy. Pltf's Compl., ¶120.

30.   The CCSO Defendants intentionally interfered with Plaintiff's valid business expectancy causing damage to Plaintiff. Pltf's Compl., ¶121.

31.   The CCSO Defendants by publishing the Smear Documents in *Arizona* to *Arizona* parties breached the relevant Wyoming statute and violated other rights secured to Plaintiff by law. Decl. ¶22.

32.   On February 18, 2020, Defendant Edwards sent a letter to Plaintiff in *Arizona* addressed to Plaintiff's *Arizona* mailing address. Decl. ¶24.

33.   On a regular basis, Plaintiff receives updates at his *Arizona* mailing address regarding his Wyoming pension/retirement. Decl. ¶25.

## ARGUMENT

Arizona courts may exercise specific personal jurisdiction over non-resident defendants to the extent permitted by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a) (2001); *A. UBERTI & C. v. Leonardo*, 181 Ariz. 565, 569, 892 P.2d 1354 (1995). "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution. Ariz. R. Civ. P. 4.2(a); *Houghton v. Piper Aircraft Corp.*, 112 Ariz. 365, 367, 542 P.2d 24 (1975) ("Arizona's long

arm statute ... is intended to give Arizona residents the maximum privileges permitted by the Constitution of the United States.").

"Considering all of the contacts between the defendants and the forum state, did those defendants engage in purposeful conduct for which they could reasonably expect to be haled into that state's courts with respect to that conduct? If such minimum contacts exist, the defendant can fairly be expected to respond to all claims arising out of those contacts, whatever the plaintiff's theory of recovery." *Planning Group v. Lake Mathews Mineral*, 226 Ariz. 262, ¶ 25, 246 P. 3d 343 (2011). The "substantial connection," between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. *A. UBERTI & C. v. Leonardo*, *supra,* citing *Asahi Metal Indus. v. Superior Court*, 480 U.S. 102, 112 (1987) (O'Connor, J.). "Jurisdictional contacts are to be analyzed not in isolation, but rather in totality." *Planning Group v. Lake Mathews Mineral, supra.* General allegations as to the inconvenience of defending the suit in Arizona, however, do not constitute compelling evidence, see *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257 (9th Cir.1989), sufficient to satisfy their burden of establishing unreasonableness of the jurisdiction.

Here, the Plaintiff's averments and declaration testimony demonstrate that Arizona courts have jurisdiction over the CCSO Defendants. It is beyond cavil that the Plaintiff has made a *prima facie* showing of facts that demonstrate the CCSO Defendants "engage[d] in purposeful conduct for which they could reasonably expect to be haled into [Arizona state court] with respect to that conduct [and] can fairly be expected to respond to all claims arising out of those contacts, whatever plaintiff's theory of recovery." *Planning Group v. Lake Mathews Mineral*, *supra; Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).

The Plaintiff resides in Arizona. The CCSO Defendants know Plaintiff resides in Arizona. The CCSO Defendants contacted Plaintiff in Arizona. The CCSO Defendants know that Plaintiff conducts business in Arizona, and was engaged as an expert witness in Arizona. The CCSO Defendants knew that Plaintiff was engaged in Arizona in litigation involving Arizona parties and occurring in an Arizona court. CCSO Defendants themselves, repeatedly, communicated with Plaintiff in Arizona. The CCSO Defendants had produced certifications (not without a struggle) to the Arizona Department of Public Safety in Arizona for Plaintiff to obtain a federal concealed carry weapon permit in Arizona. CCSO Defendants were contacted about Plaintiff by third parties from Arizona. CCSO Defendants communicated with third parties in Arizona about Plaintiff. CCSO Defendants decided to intentionally breach the confidentiality statute; and, in fact, did produce the Arizona citizen's confidential personnel records to third parties in Arizona. The CCSO Defendants carefully sorted through the personnel records and published Smear Documents in Arizona with the intent to harm Plaintiff in Arizona. The CCSO Defendants intentionally and purposefully aimed their conduct at Plaintiff in Arizona, and intended to cause Plaintiff harm in Arizona. *See, e.g.*, Pltf's Complaint, ¶¶112-140.

CCSO Defendants therefore "engage[d] in purposeful conduct for which they could reasonably expect to be haled into [Arizona's] courts with respect to that conduct [and] can fairly be expected to respond to all claims arising out of those contacts, whatever the plaintiff's theory of recovery." *Planning Group v. Lake Mathews Mineral, supra*.

Under Arizona law, an Arizona court may exercise personal jurisdiction over a non-forum defendant "to the *maximum extent* permitted by the Arizona Constitution and the United States Constitution." Ariz. R. Civ. P. 4.2(a) (emphasis added) (long arm statute). The court may exercise specific jurisdiction over a defendant if the totality of the

1  defendant's contacts with the state indicate 1) "purposeful conduct by the defendant
2  targeting the forum," 2) a "nexus between those contacts and the claim asserted," and 3)
3  that "exercise of jurisdiction would be reasonable." *Beverage v. Pullman & Comley, LLC*,
4  232 Ariz. 414, ¶ 9 (2013) *aff'd, Beverage v. Pullman & Comley, LLC*, 234 Ariz. 1 (2014)
5  (citing *Planning Grp.*, 226 Ariz. at ¶¶ 16, 25, 37). Furthermore, a defendant's contacts with
6  the forum state "are to be analyzed not in isolation, rather in totality." *Planning Grp.*, supra
7  at ¶ 29 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 482 (1985)).

8        A court may exercise personal jurisdiction over a defendant if there are "minimum
9  contacts" with the forum state and if exercising jurisdiction is consistent with "traditional
10 notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. Whether a
11 defendant has minimum contacts with the forum is determined by examining the
12 "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433
13 U.S. 186, 204 (1977). "It is not the number of contacts, but the importance of the particular
14 activities, which is persuasive." *Larsen v. Lauriel Investments, Inc.*, 161 F. Supp. 2d 1029,
15 1048 (D. Ariz. 2001) (citing *Meyers v. Hamilton Corp.*, 143 Ariz. 249 (1984)).
16 Furthermore, a defendant also has minimum contacts with the forum state if he engages in
17 "intentional conduct …calculated to cause injury" to the plaintiff in the forum state. *Calder
18 v. Jones*, 465 U.S. 783, 791 (also holding that publishing defamatory materials about a
19 citizen of another state can satisfy the minimum contacts requirement).

20       In this case, CCSO Defendants' contacts with Arizona satisfy the minimum contacts
21 requirement: CCSO Defendants purposefully targeted Arizona and intentionally intended
22 to cause harm to Plaintiff in Arizona. By publishing confidential documents that
23 misrepresented Plaintiff and portrayed him in a false light, CCSO Defendants purposefully
24 targeted Arizona. Because the allegations in this case arise from an intentional tort, the
25

1  purposeful direction test applies. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (2002).
2  This test states that there are minimum contacts where a defendant 1) commits an
3  "intentional act," 2) "expressly aimed at the forum state," 3) "causing harm that the
4  defendant knows is likely to be suffered in the forum state." *Id.*

5  In this case, CCSO Defendants' actions in responding to the subpoena, withholding
6  laudatory materials, providing inaccurate and denying Plaintiff his rights granted to him by
7  Arizona law, were intentional. CCSO Defendants' actions were also expressly aimed at
8  Arizona because they responded to a subpoena from a party in Arizona, about litigation
9  pending in Arizona, and disclosed confidential documents to a party in Arizona about a
10 citizen of Arizona. It is irrelevant that CCSO Defendants never left Wyoming or were not
11 physically present in Arizona. "Jurisdiction…may not be avoided merely because the
12 defendant did not physically enter the forum [s]tate." *Burger King, supra* at 476.

13 Finally, CCSO Defendants' actions unquestionably caused harm and the Defendants
14 knew this harm would be suffered in Arizona. CCSO Defendants knew they were sending
15 documents to Arizona. They knew Plaintiff lived in Arizona. They knew these documents
16 would be published in Arizona. The inescapable conclusion is that CCSO Defendants knew
17 that harm would not only be *likely* suffered in Arizona, but that harm would *inevitably* be
18 suffered in Arizona. By intentionally withholding documents detailing Plaintiff's many
19 positive and laudable traits and actions; by choosing to only disclose documents portraying
20 Plaintiff in a false and negative light; and by refusing to inform Plaintiff of this disclosure,
21 CCSO Defendants have undoubtedly and unequivocally purposefully targeted Plaintiff and
22 Arizona and have acted in a manner "calculated to cause injury" to Plaintiff. *Calder, supra*
23 at 791. CCSO Defendants' actions were also calculated to cause harm. CCSO Defendants
24 undeniably have a history of attempting to bully, threaten, coerce, intimidate, discredit, or
25

1  otherwise harm Plaintiff. *See* Complaint at ¶¶ 34-37, 43-46, 48-55. This history indicates that CCSO Defendants' actions in the case at hand are just further examples of malicious conduct by CCSO Defendants directed at Plaintiff.

In considering the "relationship among the defendant, the forum, and the litigation," *Shaffer, supra* at 204, courts should look for a "causal nexus between the defendant's forum contacts and the particular claims asserted." *Beverage*, 232 Ariz. at ¶ 24. The nexus requirement utilizes a but-for test, asking whether a defendant's actions were the but-for cause of the plaintiff's harm and the lawsuit. *Williams v. Lakeview Co.*, 199 Ariz. 1, ¶ 14 (2000).

Applying the but-for test in this case, it is clear that there is a causal nexus between CCSO Defendants publishing confidential and misleading information and Plaintiff's suffering and subsequent filing of this suit. There is no interruption in the causal chain. CCSO Defendants published documents portraying Plaintiff in a false and negative light and Plaintiff was harmed as a direct result. CCSO Defendants argue that simply responding to a subpoena and producing documents cannot be a but-for cause of Plaintiff's injuries because it is too far removed. This is wrong. CCSO Defendants offer no real evidence in support of this claim because there is none. If CCSO Defendants had not published defamatory materials or if they had *fully* complied with the subpoena and produced *all* of the documents in their possession, Plaintiff would not have been harmed and this lawsuit would never have been filed. Not only are CCSO Defendants' actions the but-for cause of this suit, they are the *only* cause.

CCSO Defendants also argue that the nexus element is inapplicable because there are insufficient contacts of a continuous and substantial nature to give rise to *general* jurisdiction. This statement is erroneous. The nexus requirement is part of the test for

*specific* jurisdiction, not for general jurisdiction. There is no case or law that holds that the nexus requirement cannot be met or does not apply in the absence of general jurisdiction.

In this case, it is not disputed that there is a causal nexus between CCSO Defendants' contacts with Arizona and this lawsuit. Therefore, the nexus requirement for specific jurisdiction is met.

In addition to Plaintiff's showing that the CCSO Defendants' actions were purposefully directed and gave rise to this action, the Arizona Court's exercise of jurisdiction is further supported by the fact that it is reasonable to exercise in this case. In addition to the minimum contacts and nexus requirements, specific jurisdiction over nonresident defendants exists when it "comport[s] with fair play and substantial justice." *Burger King*, 471 U.S. at 477-78. As a result, Defendants may be haled into court more readily in an intentional tort cause of action than in other tort actions. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977).

For an intentional tort cause of action, seven factors are considered when deciding whether specific jurisdiction exists. Those factors are: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the claimant's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Core-Vent Corp.* v. *Nobel Industries AB,* 11 F.3d 1482, 1487-88 (9th Cir. 1993). None of these factors are dispositive. *Id. at 1488.*

CCSO Defendants do not argue that any of these seven factors suggest granting jurisdiction would be unreasonable. Each of these factors, in fact, demonstrate the opposite.

-13-

The first factor supports the reasonability of jurisdiction because publishing defamatory information about a citizen of another state can be a sufficient interjection into that state's affairs to justify specific jurisdiction (*Lake v. Lake*, 817 F.2d 1416, 1422 (9th Cir. 1987) (especially where the Smear Documents are published to help or aid in casting an expert witness in a wrongful death action in a false light). The second factor weighs in Plaintiff's favor because there are no obstacles or unusual circumstances in this case that would impose such a significant burden on the defendants that jurisdiction would be unreasonable. The third factor weighs in Plaintiff's favor because the sovereignty of Wyoming is not infringed upon by the fact that defendants are publicly employed citizens of Wyoming. All parties are citizens of the United States and having Wyoming defendants summoned to court in Arizona is no more an infringement on state sovereignty than the inverse, or than any other diversity jurisdiction case. Sovereignty concerns weigh less heavily when there are no foreign parties. *Core-Vent Corp.,* 11 F.3d at 1489. Furthermore, the defendants' actions at issue were outside the scope of their employment and their discretion, and thus they are not distinguishable from private citizens for the purposes of this action. They were acting outside of the scope of their employment when they defamed Plaintiff in Arizona because they were acting outside of the law.

The fourth factor weighs in Plaintiff' favor because Arizona has a strong interest in protecting its citizens from defamatory attacks, wherever they may originate from. The fifth factor weighs in Plaintiff's favor because this case can be resolved efficiently in an Arizona court, which has all of the resources necessary to hear this case and provide full remedies.

The sixth factor weighs in Plaintiff's favor because the wrong at issue has a localized impact. Plaintiff's reputation is not damaged in Wyoming: Plaintiff's reputation is

damaged in Arizona, where he is known by his friends, families, and acquaintances. Plaintiff has a compelling a local interest in having his case heard and decided in Arizona – no court in some distant forum can address the wrong done to Plaintiff as well as an Arizona court. The seventh factor follows logically from the sixth. Factor Seven: Existence of an alternative forum. There is no suitable alternative forum for this dispute.

Finally, note that Defendants' claims that they could not reasonably expect to be haled into Arizona courts is without foundation. The Defendants *did* avail themselves of Arizona courts by producing the Smear Documents in Arizona courts with no objection at all to the jurisdiction of the relevant court, and with the express purpose of damaging the Plaintiff. Again, note that the CCSO defendants were not served with a subpoena, but simply responded ***to a letter*** from parties to the Arizona litigation.

## CONCLUSION

For all the foregoing reasons, Plaintiff asks the Court to deny the Motion.

Dated the 18th day of March, 2021.

            SCRUGGS, DODD & BRISENDINE, P.A.

            By: /s/ E. Allen Dodd
               E. Allen Dodd
               Attorney for David M. Lauck

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March 2021, I caused the foregoing document to be filed electronically submitted to the Clerk of Court through the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

```
 1        Michael E. Hensley, Esq./Petra Lonska Emerson, Esq.
               JONES, SKELTON & HOCHULI, P.L.C.
 2                   40 N Central Ave #2700
                      Phoenix, AZ 85004
 3                 Telephone: (602) 263-1700
                     mhensley@jshfirm.com
 4              Attorneys for defendant Black Diamond

 5
        I further certify that some of the participants in the case are not registered CM/ECF
 6   users. I have mailed the foregoing document to the following non-CM/ECF participants:

 7             Erica K. Rocush, Esq./John James Daller, Esq.
               LEWIS BRISBOIS BISGAARD & SMITH LLP
 8                2929 North Central Avenue, Suite 1700
                         Phoenix, AZ 85012
 9                   Telephone: (602) 385-1069
                   John.Daller@lewisbrisbois.com
10         Attorneys for defendants CCSO, Edwards & Matheny

11
                              SCRUGGS, DODD & BRISENDINE, P.A.
12                            By /s/E. Allen Dodd
                              E. Allen Dodd, attorney for plaintiff
13

14   ///
15
```