WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David M Lauck,<br><br>　　　　Plaintiff,<br><br>v.<br><br>County of Campbell, et al.,<br><br>　　　　Defendants. | No. CV-21-08036-PCT-MTL<br><br>**ORDER** |

Before the Court is Defendants Campbell County, Scott D. Matheny, and Charlene Rae Edwards' (collectively, "Defendants") Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion") (Doc. 8). For the reasons set forth below, the Motion is granted.[1]

**I.　BACKGROUND**

Plaintiff David M. Lauck is an Arizona resident living in Yavapai County. (Doc. 1 at 8.) Lauck served twenty-six years as a deputy sheriff in Wyoming's Campbell County Sheriff's Office ("CCSO"). (*Id.*) He then moved to Arizona in 2010 and earns a living as an expert witness in police tactics and training. (*Id.* at 14.) In 2017, Lauck was hired as an expert witness in an Arizona case regarding an officer-involved shooting. (*Id.* at 14–15.) In that case, a party served a third-party subpoena (the "Subpoena") on CCSO for Lauck's complete employment records. (*Id.* at 15.) CCSO's response to the Subpoena prompted

---

[1] Both parties have fully briefed the issues and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

1 this litigation. (*Id.* at 17–18.)

2  Campbell County is a jural entity in the State of Wyoming. (*Id.* at 1.) Scott Matheny acted as Campbell County's Sheriff and Charlene Rae Edwards acted as Counsel for Campbell County when CCSO received the Subpoena. (*Id.* at 1, 7.) Matheny previously served as undersheriff while Lauck worked at CCSO. (*Id.* at 12.) Lauck claims Matheny dislikes him because he was a "whistleblower" to department misconduct. (*Id.* at 13–14.) Lauck alleges he has suffered various forms of retaliation in the past from Defendants. (*See id.* at 13.) For example, he contends that, while he was living in Arizona, Defendants mailed him information and called him to help certify documents that Lauck needed to obtain a concealed firearm permit. (*Id.* at 8.) He alleges that he was not able to secure a permit because of Defendants' delay in certifying certain documents. (*Id.* at 8, 13.) Lauck also believes CCSO's response to the Subpoena is the latest instance of retaliation. (*Id.* at 13, 21.) He alleges that Matheny and Edwards, while in Wyoming, intentionally altered CCSO's response to smear his reputation. (*Id.* at 15–16, 18, 21.) He contends that this response was "an intentional act expressly directed at the State of Arizona[,] causing harm that each defendant knew was likely to be suffered in Arizona." (*Id.* at 7.) Defendants allegedly caused harm by intentionally including false and derogatory material into Lauck's employment records, while simultaneously omitting positive documents. (*Id.* at 17–18.)[2]

In December 2020, Lauck filed a complaint in Arizona Superior Court alleging several state-law claims, such as negligence, slander, libel, and defamation. (*Id.* at 6–23, 29–30.) Defendants then timely removed the case to this Court. (*Id.* at 1–4.) Defendants soon thereafter filed the instant Motion. (Doc. 8.) Lauck also filed a Motion to Remand. (Doc. 16.)

---

[2] Lauck also points to other contacts that Defendants made into Arizona unrelated to the alleged retaliatory conduct. (Doc. 13 at 7.) This includes Defendants sending letters to his Arizona address regarding his Wyoming pension and retirement. (*Id.*) The Court considers these contacts in its analysis. *See MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*, 442 F. Supp. 3d 738, 742 (S.D.N.Y. 2020) ("On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials.").

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move, "prior to trial, to dismiss the complaint for lack of personal jurisdiction." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that an exercise of jurisdiction is proper. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). "[I]n the absence of an evidentiary hearing," a plaintiff "need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (internal citation omitted). When examining whether there is a prima facie showing of jurisdictional facts, any "uncontroverted allegations in [the complaint] must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (internal quotation marks and citations omitted); *see also Sher*, 911 F.2d at 1361 (treating plaintiff's allegations as true).

## III. DISCUSSION

### A. Personal Jurisdiction Overview

As a general matter, if a relevant federal statute does not provide for personal jurisdiction, a "district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing Fed. R. Civ. P. 4(k)(1)(A)). Arizona's long-arm statute is coextensive with the requirements of federal due process. Ariz. R. Civ. P. 4.2(a);[3] *see also A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 569 (1995) (discussing the intention behind Arizona's long-arm statute). Consequently, the personal jurisdiction analysis under Arizona law and federal due process are the same. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). For an exercise of personal jurisdiction to comport with federal due process, the non-resident defendant must have certain "minimum contacts" with the forum state such that an exercise

---

[3] Arizona's long-arm statute states that a court "may exercise personal jurisdiction over a person, whether found within or outside Arizona, to the maximum extent permitted by the Arizona Constitution and the United States Constitution."

of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be general (based on a forum connection unrelated to the underlying suit) or specific (based on an affiliation between the forum and the underlying controversy). *See, e.g.*, *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)). For this case, the Court will only analyze specific personal jurisdiction because Lauck does not contest Defendants' argument that general jurisdiction does not exist here. (*See* Doc. 8 at 4; Doc. 13 at 12–13.)

### B. Specific Personal Jurisdiction

Specific jurisdiction requires a defendant to have taken "some act by which [it] purposefully avails itself of the privilege of conduct activities within the forum State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. ---, 141 S. Ct. 1017, 1024 (2021) (citation omitted). The contacts "must be the defendant's own choice and . . . must show that the defendant deliberately reached out beyond its home." *Id.* at 1025 (citations omitted). The Ninth Circuit employs a three-prong test to assess whether a defendant has sufficient minimum contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Picot*, 780 F.3d at 1211 (citing *Schwarzenegger*, 374 F.3d at 802) (internal citations omitted). The burden initially falls on the plaintiff to show the first two prongs but subsequently shifts to the defendant to show the third. *CollegeSource, Inc. v. AcademyOne,*

*Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

The first required element of specific jurisdiction, "purposeful direction,"[4] is measured using the "effects" test put forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). The effects test requires the defendant to "have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal quotation marks and citations omitted). When applying the effects test, the Court will look at "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Therefore, "[t]he proper question is not where the plaintiff experiences a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290.

### 1. Intentional Act

The intentional act requirement connotes an "intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Accepting Lauck's allegations as true, Defendants committed an intentional act by purposefully altering his employment records. (Doc. 1 at 17, 21.) Accordingly, *Calder*'*s* first part is satisfied.

### 2. Express Aiming

An "express aiming" analysis centers on whether "the defendant's allegedly tortious action was expressly aimed at the forum state." *Picot*, 780 F.3d at 1214 (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010)) (internal

---

[4] Although "purposeful availment" is often used as shorthand to mean both purposeful availment and purposeful direction, it is important to understand them as distinct concepts requiring distinct tests. *Schwarzenegger*, 374 F.3d at 802. The precise analysis depends on the type of claim brought – "for claims sounding in tort, [the Court] appl[ies] a purposeful direction test and look[s] to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Picot*, 780 F.3d at 1212. Because Lauck's complaint (Doc. 1 at 6–23, 29–30) alleges tort claims, the Court applies the purposeful direction test. *See, e.g.*, *Amini v. Bezsheiko*, No. CV-19-02601-PHX-SMB, 2020 WL 1911212, at *1, 3 (D. Ariz. Apr. 20, 2020) (applying the purposeful direction test to a defamation claim).

- 5 -

quotation marks omitted). Lauck brings two arguments to support personal jurisdiction. First, he claims Defendants' response to the Subpoena was expressly aimed by "causing harm that each [D]efendant knew was likely to be suffered in Arizona." (Doc. 1 at 7.) Second, Lauck contends that Defendants' emailed, called, and mailed him documents in Arizona, which he alleges are enough contacts to confer personal jurisdiction. (*Id.* at 4–5, 13.) This Court finds that neither argument individually, nor together, satisfies the express aiming requirement and addresses each in turn.

Lauck's first argument fails because Defendants did not themselves create a meaningful contact with Arizona when responding to the Subpoena. *See Walden*, 571 U.S. at 284. In certain circumstances, specific personal jurisdiction exists when a defendant has "traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to [the forum state]." *Id.* at 289. Although Defendants sent documents to, and communicated with, forum state individuals, those actions were initiated by the Subpoena—a legal document requiring their response. (Doc. 8 at 2, 7.) Express aiming requires that contact with the forum state be voluntary. *See Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018) ("[When] the defendants [are] not in the forum state of their own volition, they [have] not availed themselves of the forum under the minimum contacts test.").

Courts have found that responding to a subpoena is not a voluntary act. For example, in *Morrill v. Scott Financial Corp.*, a dispute arose over a failed development project which led to a Nevada lawsuit, in which an Arizona law firm represented the plaintiffs. 873 F.3d 1136, 1139–40 (9th Cir. 2017). The defendants' Nevada-based lawyers sent documents to the Arizona lawyers and commenced a civil action in Arizona state court to depose them. *Id.* This included the Nevada lawyers requesting subpoenas for Arizona residents, serving those subpoenas, and defending those subpoenas in Arizona court. *Id.* After the litigation intensified, the Nevada lawyers filed a defamation lawsuit in Nevada against the Arizona lawyers. *Id.* at 1141. The Arizona lawyers responded by filing a lawsuit against the Nevada lawyers in Arizona for abuse of process. *Id.* The Arizona lawyers argued that the Nevada

lawyers expressly aimed their contacts into Arizona through their calling, emailing, and subpoena-related contacts. *Id.* at 1142–43. Despite this, the court held that there was no personal jurisdiction over the defendants because the Nevada lawyers' "conduct in Arizona occurred as part of the required process for pursuing discovery and serving Plaintiffs in connection with the litigation in Nevada." *Id.* at 1146–48. *Morrill* explained that these contacts were done "in the course of complying with procedural requirements for advancing litigation being prosecuted entirely in another state, not as a separate action in which substantive claims were presented." *Id.* at 1146.

The Subpoena here required Defendants to contact Arizona involuntarily. Defendants were legally required to send the responsive documents into the forum state. Furthermore, any communication related to the Subpoena arose from out-of-state activity and was part of the required litigation process. *See id.* at 1144, 1148 (ruling defendants' communications via cell phone and email were component parts of the out-of-state litigation). Adopting Lauck's view that this conduct would confer personal jurisdiction over Defendants would impermissibly shift the focus from their ties to the forum state to their ties to Lauck. *See Walden*, 571 U.S. at 289 (finding that a similar approach "to the 'minimum contacts' analysis impermissibly allows a plaintiff's contacts with the defendants and forum to drive the jurisdictional analysis" and "obscures the reality that none of" the "challenged conduct had anything to do with [the forum] itself"). These allegations therefore do not aid Lauck's attempt to establish specific jurisdiction or show that Defendants "deliberately reached out beyond its home." *Ford Motor Co.*, 141 S. Ct. at 1025.

Indeed, even in cases where a plaintiff alleges that the defendants intentionally sent fraudulent documents into the forum state that relate to the defendants' previous relationship in another state, courts do not find the express aiming requirement met. *See, e.g.*, *Pringle v. Cardall*, No. 2:18-CV-2035 WBS KJN, 2019 WL 4054104 (E.D. Cal. Aug. 28, 2019), *aff'd*, 837 F. App'x 556 (9th Cir. 2021). In *Pringle*, the court dismissed plaintiff's personal jurisdiction argument that defendants "conspired to and submitted a

fraudulent application to transfer plaintiff's parole from Idaho to [the forum state]." *Id.* at *6. The court found that these contacts related to their previous relationship in a non-forum state and occurred "simply because plaintiff had been incarcerated in [the forum state] after leaving Idaho." *Id.* These actions, that were "only implicated by the happenstance of plaintiff's residence," cannot serve as the basis for jurisdiction. *Id.* (quoting *Morrill*, 873 F.3d at 1146). Lauck's alleged contacts related to the Subpoena were also implicated by the happenstance of his residence in the forum state. Lauck's own allegations indicate that he would have experienced the same allegedly tortious conduct no matter which state he resided in. *See Morrill*, 873 F.3d at 1146. Finally, to the extent the Lauck argues that Defendants' actions to include, or omit, certain documents in the Subpoena's response is enough to confer personal jurisdiction, the Court finds that unpersuasive. These actions relate to conduct that occurred only in Wyoming, which had no relation to the forum state, Arizona. *See Pringle*, 2019 WL 4054104, at *5 (finding that refusing to process certain documents, executing allegedly unlawful orders, and issuing a false parole violation outside the forum state "had no relation to [the forum state], . . . [and] the court cannot rely on it to exercise specific jurisdiction").

Second, Lauck argues that Defendants' phone calls, emails, and letters into the forum state are enough contacts to confer personal jurisdiction. (Doc. 13 at 4.) This argument, however, is not persuasive. Generally, phone calls and emails are not considered a purposeful contact for express aiming. *See Gonzalez v. US Hum. Rts. Network*, No. CV-20-00757-PHX-DWL, 2021 WL 86767, at *7 (D. Ariz. Jan. 11, 2021) ("And the law in the Ninth Circuit is clear—phone calls, emails, and similar forms of communication with a plaintiff in the forum state 'simply [do not] qualify as purposeful activity . . . .'") (citation omitted); *SKAPA Holdings LLC v. Seitz*, No. CV-20-00611-PHX-DJH, 2021 WL 672091, at *6 (D. Ariz. Jan. 21, 2021) (holding alleged phone calls and emails did not establish a showing of purposeful direction). It is important to note that many of these phone calls, emails, and letters arose from Lauck's insistence that Defendants' certify documents so he could obtain a concealed-carry permit. *See Picot*, 780 F.3d at 1213 (stating that plaintiff's

contacts cannot drive the jurisdictional inquiry). None of the contacts alleged here permit this Court to exercise personal jurisdiction over Defendants.

Because Lauck has failed to show that Defendants' alleged tortious behavior was expressly aimed at Arizona, the Court need not advance to *Calder's* third requirement, *Schwarzenegger*, 374 F.3d at 807 n.1, or the remaining prongs of the minimum contacts test. *Ariz. Sch. Risk Retention Tr., Inc. v. NMTC, Inc.*, 169 F. Supp. 3d 931, 936 (D. Ariz. 2016). Lauck has failed to meet his burden to prove that the Court has personal jurisdiction over Defendants. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) ("If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law."). Even if this Court considered the third requirement, however, Lauck's argument fails. He must show his injury is "'tethered' to the forum state in some 'meaningful way.'" *Gonzalez*, 2021 WL 86767, at *9. His alleged reputational injury is "entirely personal to h[im] and would follow h[im] wherever [he] might choose to live or travel." *Id.* (quoting *Picot*, 780 F.3d at 1215). Arizona's involvement is therefore only a byproduct of Lauck's residence and insufficient by itself to establish personal jurisdiction. *Id.* The Court must therefore dismiss this action for lack of personal jurisdiction.

### C. Motion to Remand

Before the Court is also Lauck's Motion to Remand (Doc. 16). Courts need not address a pending motion to remand where there is a "straightforward issue of personal jurisdiction where the resolution of personal jurisdiction will dispose of the case." *Okken v. Davis*, No. CV 08-1387-PHX-DKD, 2009 WL 10708712, at *1 n.1 (D. Ariz. Mar. 25, 2009) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587–88 (1999)); *see also In re Bard IVC Filters Prods. Liab. Litig.*, No. CV-16-02442-PHX-DGC, 2016 WL 6393595, at *2 (D. Ariz. Oct. 28, 2016) (denying a pending motion to remand as moot after resolving a straightforward personal jurisdiction issue). As discussed above, this Court does not have personal jurisdiction over Defendants. The Court therefore need not address the Motion to Remand (Doc. 16) and denies it as moot.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED granting** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 8). The Clerk of the Court shall enter judgment dismissing this case without prejudice as to the underlying merits of this action and close this case.

**IT IS FURTHER ORDERED denying as moot** Plaintiff's Motion to Remand (Doc. 16).

Dated this 2nd day of July, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge